IN THE UNITED STATES DISTRICT FOR
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO.: 5:11-cv-130

| | | |
|---|---|---|
| **J & J Sports Productions, Inc.,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| v. ) | | **ORDER & JUDGMENT** |
| ) | | |
| **Nelson Jimenez and Narendra** ) | | |
| **Bhanubhai Patel, Individually,** ) | | |
| **d/b/a La Libertad,** ) | | |
| ) | | |
| **Defendants.** ) | | |
| ) | | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment (Doc. 17) and Memorandum in Support (Doc. 18), both filed on July 3, 2013.

## I.  DISCUSSION

Plaintiff J & J Sports Productions, Inc. ("J & J") is an international distributor of sports and entertainment programming. J & J purchases licensing rights for the commercial exhibition of sports and entertainment programming. J & J then enters into sub-licensing agreements with commercial entities, thereby granting the entity the right to exhibit the program legitimately pursuant to written agreement.

The essence of J & J's cause of action is that Defendants unlawfully intercepted and intentionally broadcast a sporting event in violation of federal law, namely, 47 U.S.C. §§ 605 and 553.[1] J & J also requests damages for the tort of conversion.

J & J possessed the exclusive territorial rights to broadcast this event. The sporting event allegedly intercepted (or "pirated") is the *"Number One": Floyd Mayweather, Jr. v. Juan Manuel*

---

[1] Section 605 targets commercial establishments and prohibits the interception and broadcast of satellite cable programming without a license for gain. Section 553 generally prohibits the unauthorized interception or reception of communications over a cable system.

*Marquez Championship Fight Program* (hereinafter, the "Program"), which was telecast nationwide on September 19, 2009, including undercard or preliminary bouts.[2]

J & J offers an affidavit from Mr. Kim Duncan ("Duncan"), a hired investigator. According to Duncan, he visited La Libertad Bar ("La Libertad") on September 19, 2009, at approximately 9:27 p.m. (Doc. 17-2 at 1.) Duncan was able to watch the Program, namely, an undercard bout between fighters "Katsidis wearing black trunks and Escobedo wearing black trunks with a green and red stripe on sides." (*Id.*)

J & J also offers an affidavit from its President, Joseph M. Gagliardi ("Gagliardi"). Gagliardi avers that J & J's programming "is not and cannot be mistakenly, innocently or accidentally intercepted." (Doc. 17-3 at 3, ¶9.) Rather, Gagliardi claims that the use of various mechanisms (e.g., a "blackbox," "hotbox," "pancake box" for cable TV lines; "smartcard," "testcard" or "programming card" for satellite receiver lines; or other illegal unencryption devices like the purchase of illegal satellite authorization codes found on the internet or trade publications) is necessarily or "per se intentional" in that these devices are designed to descramble the reception of a pay-per-view broadcast. (*Id.* at 3-4.) By way of default, J & J seeks to recover the maximum amount of statutory damages, including attorneys' fees, investigative costs, and interest and those damages appropriate for the tort of conversion.

The record reveals that J & J was successful in serving Nelson Jimenez, d/b/a La Libertad (Doc. 10), but failed to serve Narenda Bhanubhai Patel. The Clerk's;s Entry of Default as to Nelson Jimenez, d/b/a La Libertad, was entered on April 4, 2011. (Doc. 12.) Accordingly, J and J's Motion for Default Judgment is limited to Nelson Jimenez, d/b/a La Libertad. (Doc. 17 at 1.)

---

[2] For convenience, the Court will refer to the boxing match itself, as well as all related bouts, as the "Program."

### A. Violation of The Cable Act, 47 U.S.C. § 605(a)

J & J has established a claim under Section 605(a).[3] Section 605(a) provides in pertinent part as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47. U.S.C. § 605(a). Any person aggrieved by a violation of Section 605(a) may bring a private civil action against the violator and seek damages under Section 605(e)(3)(c). *See* 47 U.S.C. § 605(e)(3)(c). Having reviewed the record, the Court finds Plaintiff has proven that Defendant engaged in the unauthorized and knowing interception of its satellite broadcast, which Defendant published in their bar for their own benefit and the benefit of their patrons. Thus, Plaintiff has proven violation under 47 U.S.C. § 605(a).

### B. Statutory Damages Pursuant to The Cable Act, 47 U.S.C. § 605(e)

J & J seeks to hold Defendant liable for statutory damages pursuant to 47 U.S.C. § 605. Damages for a violation of Section 605(a) are permitted as follows:

> The Court – (i) may grant temporary and final injunction on such terms as it may deem reasonable to prevent or restrain violations of subsection (a) of this section; (ii) may award damages as described in subparagraph (C); and (iii) shall direct the recovery of full costs, including reasonable attorneys' fees to an aggrieved party who prevails.

---

[3] Upon entry of default, the Court accepted as true Plaintiff's allegations. *See* 49 C.J.S. Judgments § 273(2011) ("The effect of a default in answering is to deem admitted all the well-pleaded facts in the complaint . . ."); *Pentech Fin. Servs. V. Old Dominion Saw Works, Inc.*, 2009 U.S. Dist. LEXIS 55786 (W.D.Va. June 30, 2009).

47 U.S.C. § 605(e)(3)(B) (emphasis added). Subparagraph (C) provides as follows:

> Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses . . . (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . .

47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis provided). The Court may grant enhanced damages up to a maximum of $100,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) where the defendant has engaged in willful violation of the statute or where the defendant has committed the violation for "purposes of direct or indirect commercial advantage or private financial gain."

The award of statutory damages under Section 605(e)(3) is committed to the Court's discretion. *See* DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 330 n.8 (4th Cir. 2008) (adopting factors invoked in *Nalley* for purposes of discretionary decisions regarding imposing statutory damages); *Nalley v. Nalley*, 52 F.3d 649, 652 (4th Cir. 1995). The Fourth Circuit has deemed the following factors ("the *Nalley* factors") relevant: the severity of the violation; the degree of harm to the plaintiff; the relative financial burdens of the parties; and the purpose to be served by imposing statutory damages. *Id.* at 330. In addition, the *Nalley* factors "should be considered against the backdrop of the seriousness with which Congress has treated the underlying conduct at issue." *Id.* at 328 (noting that Congress intended "that violators who intercept encrypted transmission, requiring greater technical savvy and efforts, are to face greater punishments than those who take fewer measures in order to intercept nonencrypted transmission.") (internal citations omitted).

In the instant case, J & J asks for an enhanced statutory damages award in the amount of $110,000.00, the maximum amount of statutory damages allowed. For the reasons set forth herein, the Court will award the maximum allowed for unenhanced statutory damages.

The starting point for analysis is $2,200.00. This is the price Defendant would have had to pay to legally display the Program at La Libertad. (Doc. 17-2 at 2) (La Libertad seating capacity); (Doc. 17-3 at 10) (pricing schedule based on seating capacity). The damages in this case must at least exceed $2,200, because the generally accepted primary purpose to be served in imposing statutory damages is to deter future violations. The damages have no deterrent effect if the award does not exceed the actual price of the Program.

As to the severity of the violation, there is no evidence in the record showing an outright attempt by the Defendant to expose the Program to the public or display the program for commercial gain. However, as stressed in Gagliardi's affidavit, the very nature of this violation does not lend itself to blatant promotion and display to the public for commercial gain. (Doc. 17-3 at 5-6.) To do so, such as advertising the availability of the Program at La Libertad on social media, would make the policing of this illegal conduct much easier. Defendants have failed to respond to the Complaint, so the exact nature of their conduct in communicating to their patrons the availability of the Program at La Libertad is unknown. However, Defendant should not be permitted to benefit for failing to respond and it can be assumed those involved with the illegal intercept and display of the Program communicated as much to other individuals.

Next, the degree of harm and financial burden to J & J's are also factors to be considered. Other than the obvious harm of Defendant obtaining the Program without making the required payment, J & J asserts that it dedicates a significant amount of money to the identification and detection of signal pirates and that its overall monetary loss for these types of violations are in

the millions. (Doc. 17-3 at 2, 4.) In addition, Defendant's illegal interception and display of the Program damages the reputation and legitimacy that J & J has accrued with existing customers. *J & J Sports Prods., Inc. v. Las Chivas, Inc.*, 5:10CV187-V, 2012 WL 71819 (W.D.N.C. Jan. 10, 2012). From the perspective of existing customers, they have paid a price to display a program for the benefit of their patrons based on the assumption that the only other establishments that can offer the same experience have also paid the appropriate price. Defendant's actions directly undercut this assumption which causes existing customers to at least second guess spending their money with J & J.

Having now considered the *Nalley* factors, and the evidence before the undersigned with respect to Defendant, the Court, in its discretion, will award statutory damages for Defendant's violation of Section 605(a) in the amount of **$10,000**. *See* 47 U.S.C. § 605(e)(3)(c)(i)(II). This award should cover any actual damages or losses to J & J as well as pose a sufficient deterrent. J & J is also entitled to its attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii). J & J requests **$1,012.50** in attorney fees, which is reasonable.

### C. The Unauthorized Reception of Cable Service, Violation of 47 U.S.C. § 553

In Count II of the Complaint, based on identical allegations, J & J also asserts a cause of action under 47 U.S.C. § 553. Title 47, United States Code, Section 553 provides in pertinent part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1). The term "assist in intercepting or receiving" includes "the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for

unauthorized reception of any communications service offered over a cable system . . . ." 47 U.S.C. § 553(b).

Like Section 605, Section 553 contemplates actual or statutory damages as well as enhanced damages awards for willful violations aimed at commercial advantage or private financial gain. 47 U.S.C. § 553(b)(3)(A) and (B). Statutory damages are authorized "in sum not less than $250 or more than $10,000." 47 U.S.C. § 553(b)(3)(A)(ii). "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase award of damages, whether actual or statutory . . . by an amount of not more than $50,000." 47 U.S.C. § 553(b)(3)(B). Thus, in the event of a willful violation, an enhanced award is left to the discretion of the Court.

In light of damages being awarded pursuant to Section 605, the Court declines to award damages under Section 553. *See Kingvision Pay-Per-View, Ltd. V. Ortega*, 2002 US Dist. Lexis 24305, *6 (N.D. Cal. 2002) (declining to award statutory damages under both Sections 605 and 553, finding that to do so would be cumulative.)

**D. Conversion**

In Count III of the Complaint, based upon identical allegations, J & J also asserts a cause of action for the tort of conversion. J & J requests compensatory and punitive damages on the basis that Defendant's acts were willful, malicious, and intentionally designed to harm J & J. (Doc. 1 at 5, ¶24.)

In North Carolina, the tort of conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citing 89 C.J.S., Trover and Conversion § 1.)

Here, Defendant committed the tort of conversion because Defendant illegally obtained possession of the Program and converted it to its own use and benefit. However, the Court declines to award compensatory damages for the same reasons the Court declined to award damages for Defendant's Section 553 violation. Additionally, any punitive or deterrent effect sought to be achieved by the request for punitive damages has already been addressed by the Court's award of statutory damages for Defendant's violation of Section 605.

## II.   CONCLUSION

**NOW, THEREFORE**, the Court concludes that judgment by default should be hereby entered against Defendant Nelson Jimenez, individually, d/b/a La Libertad, in accordance with the prayer of said Complaint, Motion for Default Judgment, Memorandum in Support, and accompanying exhibits, for the sum set forth below; and

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED** that the Plaintiff have and recover of the Defendant the total sum of **$11,012.50.**

Signed: February 26, 2014

Richard L. Voorhees
United States District Judge